# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **Criminal Case No. 3:10-cr-00033-1** |
| | ) | |
| **v.** | ) | **2255 MEMORANDUM OPINION** |
| | ) | |
| **ANTWAN LAMAR JACKSON,** | ) | **By: Norman K. Moon** |
| Petitioner. | ) | **United States District Judge** |

Petitioner Antwan L. Jackson, a federal inmate proceeding *pro se*, filed this motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255, challenging his life sentence for murder, various drug and firearm offenses, and tampering with a government witness. The government filed a motion to dismiss and Jackson has responded, making the matter ripe for consideration.[1] After reviewing the record, I grant the government's motion to dismiss and dismiss the motion to vacate, set aside, or correct sentence.

## I.

On September 22, 2010, Jackson and one co-defendant were charged in a multi-count indictment. Jackson was charged with the following counts: (1) conspiring to possess with the intent to distribute, and to distribute, 5 kilograms or more of cocaine and 50 grams or more of cocaine base ("crack cocaine"), in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii) and (iii), and 846 (count one); (2) distribution of crack cocaine, in violation of 21 U.S.C §§ 841(a)(1) and (b)(1)(C) (count two); (3) possession of a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1) (count three); (4) possession of a firearm in furtherance of a drug trafficking crime and causing the death of a person, Johnell Greene ("Greene"), through the

---

[1] Petitioner also filed—before submitting his § 2255 motion—a motion under 28 U.S.C. § 753(f) for copies of transcripts without payment. (Dkt. 129). I deny that motion. First, the motion is moot because Petitioner subsequently filed his § 2255 motion and cited transcript testimony throughout both his brief and exhibits. Second, Petitioner has not satisfied the statutory requirements of Section 753(f). Furthermore, his own filings indicate he could have paid the transcript costs due to employment and funds received from a family member (Dkt. 129-1 at 2), a point further supported by his evident procurement of the transcripts for use in his substitutive motion.

use of the firearm, whose killing was a murder, in violation of 18 U.S.C. §§ 924(c) and 924(j) (count five); (5) murder of Greene with the intent to prevent communication by Greene to a law-enforcement officer of information relating to the commission of federal offenses, as set forth in counts one through four, in violation of 18 U.S.C. § 1512(a)(1)(C) (count six); (6) distribution and possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (count seven); (7) knowingly using and carrying a firearm during and in relation to a drug trafficking crime, as set forth in count seven, in violation of 18 U.S.C. § 924(c)(1)(A) and 18 U.S.C. § 2 (count eight); (8) corruptly persuading Marquita Hamilton ("Marquita") and Tyrone Scott ("Tyrone") to provide a false alibi to law enforcement, with the intent to influence the testimony of Marquita and Tyrone in an official proceeding, in violation of 18 U.S.C. § 1512(b)(1) (counts nine and ten).[2]

Jackson pleaded not guilty to all counts and proceeded to a jury trial that occurred on April 11–18, 2011. The jury found Jackson guilty on all counts. On August 15, 2011, I sentenced Jackson to life imprisonment, plus 120 months to run consecutively.[3] Jackson appealed to the United States Court of Appeals for the Fourth Circuit, which affirmed his convictions and this court's judgment. *See United States v. Jackson*, 706 F.3d 264, 265 (4th Cir. 2013). Jackson's petition for writ of certiorari was denied on June 3, 2013.

The evidence at trial was as follows. In early 2006, prior to Greene's murder, state and federal law enforcement officials began undercover operations targeting a drug distribution network at the Lindsay Drive apartment complex in Orange, Virginia. On March 24, 2006,

---

[2] Count four charged codefendant Jeffrey S. Deane, Jr. ("Deane, Jr.") with possessing a firearm in furtherance of a drug trafficking crime, and in the course of this violation, brandishing and discharging the firearm, in violation of 18 U.S.C. § 924(c)(1)(A)(iii). Deane, Jr. pleaded guilty to counts one and four pursuant to a plea agreement.

[3] The Presentence Investigation Report ("PSR") recommended a total offense level of 43 and a criminal history category of II, resulting in a guideline sentence of life imprisonment plus 120 months, to run consecutively.

confidential informants purchased drugs directly from Jackson. Law enforcement officials identified Jackson as the leader of the drug distribution conspiracy. Jackson used his half brothers Cedric Washington ("Cedric") and Sheron Gentry ("Sheron"), as well as other individuals, to distribute the drugs.[4] In June 2006, Greene stole drugs and money from Garian Washington ("Garian"), one of Jackson's dealers on Lindsay Drive. After learning of the robbery, Jackson and Garian confronted Greene, and Jackson demanded that Garian "handle" Greene. Garian shot at Greene, but missed, and Greene fled unharmed. Shortly thereafter, while in custody on unrelated charges, Greene became an informant for law enforcement. Greene implicated both Jackson and Washington in the attempted murder.

On August 11, 2006, Greene was released from jail and returned to the Lindsay Drive area. That night, he was attacked in a parking lot on Lindsay Drive by a masked assailant and died from multiple gunshot wounds. On August 14, 2006, Jackson was arrested on charges of violating his probation. While in prison, Jackson was indicted for the murder of Greene, for various drug and firearm offenses, and for persuading Marquita and Tyrone to provide a false alibi to law enforcement. At trial, Marquita testified that Jackson had asked her to tell the police he had been home playing video games on the night of the murder.[5] Tyrone testified that Jackson told him he had killed a man in Orange, Virginia, and needed an alibi.[6] Jackson asked

---

[4] While Jackson had moved to Staunton, Virginia, in 2005, he traveled to Lindsay Drive three to four days a week.

[5] At trial, the government introduced a note in Jackson's handwriting that stated, "Alibi" at the top and included details such as "ate dinner, Alfredo, at 10:00 p.m." and "played video games from 10 to 11:30." (Trial Tr. at 176, Dkt. No. 109.)

[6] Tyrone testified as follows:

| Government: | What did [Jackson] say? |
|---|---|
| Tyrone: | [Jackson] said he need[ed] me to give him an alibi [for August 11, 2006]. |
| Government: | Did he say why? |
| Tyrone: | Because he had killed somebody in Orange. |

3

Tyrone to tell the police he had been playing video games with Jackson at Jackson's home on the night of the murder. Two eyewitnesses also testified at trial that Jackson killed Greene.

In his § 2255 motion, as amended, Jackson asserts claims of ineffective assistance against both trial and appellate counsel. Jackson also alleges that he is actually innocent of several counts of the indictment. I conclude that Jackson's motion to vacate must be dismissed.

## II.

To state a claim for relief under § 2255, a petitioner must prove that one of the following occurred: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States"; (2) that "the court was without jurisdiction to impose such a sentence"; or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. Jackson bears the burden of proving grounds for a collateral attack by a preponderance of the evidence. *Jacobs v. United States*, 350 F.2d 571, 574 (4th Cir. 1965); *Hall v. United States*, 30 F. Supp. 2d 883, 889 (E.D. Va. 1998).

A collateral attack under § 2255 may not substitute for an appeal. Claims regarding trial or sentencing errors that could have been, but were not, raised on direct appeal are barred from review under § 2255, unless the defendant shows cause for the default and actual prejudice, or demonstrates actual innocence. *See Bousley v. United States*, 523 U.S. 614, 622 (1998). Attorney error can serve as cause for default, but only if it amounts to a violation of the defendant's constitutional right to effective assistance of counsel. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

To establish a claim of ineffective assistance of counsel, petitioner must satisfy the two-

---

(Trial Tr. at 249-251, Dkt. No. 109.)

pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 671 (1984).[7] The first prong of *Strickland* requires a petitioner to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," meaning that counsel's representation fell below an objective standard of reasonableness. *Id*. at 687–88. Courts apply a strong presumption that counsel's performance was within the range of reasonable professional assistance. *Id*. at 689; *see also Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1297–99 (4th Cir. 1992); *Hutchins v. Garrison*, 724 F.2d 1425, 1430–31 (4th Cir. 1983).

The second prong of *Strickland* requires a petitioner to show that counsel's deficient performance prejudiced him by demonstrating a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

### III.

Jackson alleges that trial counsel provided ineffective assistance by: (1) failing to sufficiently impeach multiple government witnesses; (2) failing to challenge the indictment; (3) failing to investigate and subpoena certain witnesses, including witnesses with exculpatory information; (4) coercing Jackson into not testifying at trial; (5) failing to move to suppress certain evidence; and (6) failing to object to government intimidation of witnesses. Jackson alleges that appellate counsel provided ineffective assistance by failing to appeal based on: (1) prosecutorial misconduct; and (2) sufficiency of the evidence. Jackson also asserts a claim of actual innocence.

#### A. Ineffective Assistance of Trial Counsel

---

[7] If a petitioner has not satisfied one prong of the test, a court does not need to inquire whether he has satisfied the other prong. *Strickland,* 466 U.S. at 697.

**(1) Alleged Failure to Impeach Government Witnesses**

Jackson argues that counsel provided ineffective assistance by failing to sufficiently cross-examine and impeach a number of government witnesses with their prior inconsistent testimony before the grand jury, or in statements to the police.[8] For example, Jackson points out that Darius Greene ("Darius") testified before the grand jury that he saw Jackson with a gun "on him every day," yet during trial Darius testified that he had never seen Jackson with a gun. (Mot. to Vacate at 12, Dkt. No. 132-1.) Jackson further states that Sheron provided testimony at trial inconsistent with his grand jury testimony including whether he carried a gun, and whether Jackson told his half-brothers Sheron or Cedric that he burned his clothes and melted down the gun after the shooting.[9] (*Id.* at 10.)

Jackson also points out a number of other inconsistencies. However, Jackson has failed to overcome the "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "Defense counsel constantly must decide what questions to ask and how much time to spend on a particular witness. These are precisely the types of tactical decisions a court is not supposed to second guess." *Higgs v. United States*, 711 F. Supp. 2d 479, 515 (D. Md. 2010) (citing *Byram v. Ozmint*, 339 F.3d 203, 209 (4th Cir. 2003)); *see also Yarbrough v. Johnson*, 490 F.Supp.2d 694, 738–39 (E.D. Va. 2007) ("A hindsight review of any cross-examination will unquestionably reveal an opportunity to ask one more question or highlight one more point; however, in the midst of a trial with an

---

[8] These government witnesses include Sheron, Michael Washington, Garian, Travis Jones, Darius Greene, Antron Greene, Jason Jordan, Marquita, Tyrone, and Cedric.

[9] Jackson also submitted an Affidavit from Sheron with his Motion to Amend admitting to further inconsistencies and falsehoods in Sheron's testimony, including Sheron's statements to police regarding whether Jackson had shot Greene.

6

adverse witness on the stand, a lawyer must always make split-second decisions as to how to best shape his questioning in order to extract the most desirable responses.").

While counsel did not address every inconsistency identified by Jackson, he did cross-examine each witness Jackson lists, and further questioned their credibility in closing argument.[10]   Counsel impeached Sheron's testimony by showing he made inconsistent statements to the police about whether he carried a gun, sold drugs, obtained a gun following the April 16th search warrant, was outside when Garian shot at Greene and missed, and where Jackson lived.  (Trial Tr. at 153-69, Dkt. No. 106).  Counsel also cross-examined Sheron on bias grounds, asking him, "[Y]our sole reason for testifying is that you hope your sentence is going to be reduced for doing this, correct?"  (*Id*. at 176.)  Counsel impeached Michael Washington's ("Michael") testimony that he had never been arrested by showing that he had been convicted for felony drug possession.[11] (Trial Tr. at 63, Dkt. No. 107.)  Counsel cross-examined Travis Jones ("Travis") regarding his previous convictions, as well as favorable treatment he received from law enforcement for his cooperation.  (*Id*. at 131–34.)  Counsel also cross-examined Darius and Antron Greene ("Antron"), and impeached Antron using his testimony before the grand jury.  (*Id*. at 161, 94–95, 89–98, 161–67.)[12]

---

[10]   Counsel stated at closing, "What we've got here is a situation where folks, virtually everybody who testified in this case, certainly all of the non-police, non-expert witnesses, they're all interested parties.  They're all people who know something because they were involved in exactly the same illegal conduct . . . [W]e are where we are with no possibility of knowing for sure whether these folks are all telling the truth."  (Trial Tr. at 237, Dkt. No. 110.)

[11] Counsel impeached Michael on bias grounds as well, *i.e.*, how Michael was told he would not be charged in return for his testimony.  (Trial Tr. at 86 – 88, Dkt. No. 107.)

[12]   The other witnesses listed by Jackson were also effectively cross-examined and impeached by counsel.  Counsel impeached Jason Jordan by highlighting his inconsistent statement to the police, as well as his statements regarding visiting the storage shed, and the fact that he was facing a 33 year sentence.  (Trial Tr. at 129-35, Dkt. No. 109.)  Counsel impeached Marquita using her grand jury testimony, statements to law enforcement, and that she avoided criminal charges by testifying for the government.  (*Id*. at 200-18.)  Counsel also impeached both Tyrone and Cedric by emphasizing that they were receiving favorable treatment from law enforcement in exchange for their testimony.  (Trial Tr. at 268-79, Dkt. No. 110; Trial Tr. at 86-101, Dkt. No. 109.)

Based on this record, Jackson cannot show that counsel's cross-examination fell outside of "the wide range of reasonable professional assistance" or that the trial outcome would have been any different had counsel used different, or additional impeachment and cross-examination tactics.[13] Accordingly, I conclude that Jackson has not demonstrated that counsel's performance was deficient or that Jackson was prejudiced by the alleged deficient performance. Therefore, this claim will be dismissed.

**(2) Alleged Failure to Challenge the Indictment**

Jackson asserts that counsel provided ineffective assistance by failing to challenge "the insufficiency of the indictment." (Mot. to Vacate at 17, Dkt. No. 132.)[14] Jackson claims that "the indictment for conspiracy that was charged differed in purpose from the conspiracy charge brought to trial."[15] (*Id.* at 18.) Jackson argues that the government constructively amended the indictment by excluding Deane, Jr. from count one (conspiracy to distribute illegal narcotics),

---

[13] As support for his argument that counsel was ineffective for not pointing out every instance of inconsistent witness testimony, Jackson asserts that the government's "case was built around the credibility of its witnesses." (Reply to Mot. to Dismiss at 11, Dkt. No. 150.) However, this is not sufficient to show that he suffered prejudice as a result of counsel's alleged failure.

[14] Jackson claims that counsel was "denied entirely during [this] critical stage in the proceeding." (Mot. to Vacate at 17.) If a convicted defendant can show constructive denial of counsel, he need not demonstrate prejudice under *Strickland*. *See United States v. Cronic*, 466 U.S. 648, 658 (1984) ("There are, however, circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified."); *Strickland*, 466 U.S. at 692 ("Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice."). However, Jackson has not shown that counsel was absent during a critical stage in the proceedings, or that he was constructively denied counsel. Accordingly, this claim will be analyzed under the *Strickland* prongs, which require Jackson to prove prejudice.

[15] Jackson also asserts that counsel was ineffective for failing to move for a bill of particulars under Federal Rule of Criminal Procedure 7(f). A bill of particulars is a defendant's means of obtaining specific information about charges brought in a vague or broadly-worded indictment. *United States v. Debrow*, 346 U.S. 374, 378 (1953). However, the indictment in this case was sufficient, as it identified the time frame of the activity charged, the controlled substances involved, and the statutes violated. *See United States v. American Waste Fibers Co.*, 809 F.2d 1044, 1046 (4th Cir. 1987) (noting that an indictment may simply be a short, plain statement of the charge, sufficiently precise to notify the defendant of the accusation he must meet and to protect him from double jeopardy). Thus, Jackson does not show that a motion for a bill of particulars would have been successful, and this claim fails. *See Sharpe v. Bell*, 593 F.3d 372, 383 (4th Cir. 2010) (finding that the Sixth Amendment does not require counsel to raise a meritless argument).

8

and adding Cedric and Sheron.[16]  (*Id.* at 19.)  A constructive amendment occurs where "the government, through its presentation of evidence and/or its argument, or the district court, through its instructions to the jury, or both, broadens the bases for conviction beyond those charged in the indictment . . . such that the defendant is actually convicted of a crime other than that charged in the indictment."  *United States v. Randall*, 171 F.3d 195, 203 (4th Cir. 1999) (citations and internal quotation marks omitted).

Jackson has failed to show that a constructive amendment occurred.  First, Deane, Jr. was not constructively excluded from the indictment; in fact, he pleaded guilty to count one. Moreover, the indictment included language that Jackson conspired with "other persons, both known and unknown to the grand jury," which encompasses Cedric and Sheron, known associates accused of assisting Jackson with distributing illegal narcotics.  Thus, Jackson has failed to show that the fact that Sheron and Cedric were not named in the indictment provided grounds for counsel to challenge the indictment.  *See United States v. Amend,* 791 F.2d 1120, 1125 (4th Cir. 1986) (finding that indictment was not defective despite failing to provide "the names of the five individuals with whom [the defendant] acted in concert");  *see also American Waste Fibers Co.*, 809 F.2d at 1046 (noting that "[t]he fact that the indictment refers to 'divers other persons' rather than naming the co-conspirators does not automatically render the indictment invalid.").  Accordingly, Jackson has not shown ineffective assistance of counsel under *Strickland* and this claim will be dismissed.

_____

[16] In his reply to the motion to dismiss, Jackson also claims that counsel was constitutionally ineffective for failing to object to the jury instructions regarding count five.  He asserts that a constructive amendment occurred because the court omitted the required language "in furtherance of a drug trafficking crime" and using a firearm "during and in relation" to a drug trafficking crime.  (Reply to Mot. to Dismiss as 14.)  However, I conclude that jury instruction number 31, which addresses count five of the indictment, contains all the essential elements of the offense charged.  (Jury Instruction 31 at 35, Dkt. No. 61.)  Additionally, the language on the verdict form for count five tracks that of the indictment.  (Verdict Form at 3, Dkt. No. 63.)  Accordingly, Jackson has not shown any grounds on which an objection would have been successful, and, thus, has not shown that counsel provided ineffective assistance.

9

### (3) Alleged Failure to Investigate and Subpoena Witnesses

Jackson asserts that counsel provided ineffective assistance by failing to investigate and subpoena certain witnesses. Under the Sixth Amendment, an attorney "has a duty to make reasonable investigations or make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. Jackson provides a list of witnesses he claims counsel should have investigated.[17] However, Jackson has not proffered any information that would have changed the outcome of the trial.

Jackson's mother, Mavis Jackson, filed an affidavit stating that her other son, Sheron, told her at some point subsequent to Jackson's trial, that he had lied during his grand jury and trial testimony. (Aff. Mavis Jackson at 1, Dkt. No. 144-2.) However, as she was not aware of this information at the time of Jackson's trial, her testimony would not have changed the outcome of the trial. Jackson also attaches police reports to his reply to the motion to dismiss, containing the testimony that Jackson proffers for Faye Norwood, Tonya Shifflet, Brenda Coxton, Xenia Cunningham, and Latisha Nibblins. These individuals told law enforcement that they had seen a black man, dressed in black, in the area of Lindsey Drive where the murder occurred, and several also described him as "suspicious" and having dreadlocks.[18] (Exs. K-O to Reply to Mot. to Dismiss, Dkt. No. 150, at 16.) However, this is not exculpatory information, and Jackson has not shown that this testimony would have changed the trial outcome. Further, the expected testimony from at least one witness was decidedly unfavorable. Tonya Shifflet

---

[17] This list of witnesses includes Deane, Jr., Marquita, Tyrone, Tonya Shifflet, Latisha Nibblins, Xenia Cunningham, Brenda Coxton, Faye Norwood, Veronica Walker, James Walker, and Mavis Jackson (Jackson's mother).

[18] Veronica Walker also indicated to the police that she had seen a male walk through her yard on the night of the murder, whom she believed was holding a gun, and she identified this male as Tony Banks. (Ex. S to Reply to Mot. to Dismiss, Dkt. No. 150-1 at 49.) However, according to Jackson's affidavit, when contacted by counsel, Veronica Walker stated that she "didn't want to be involved with the case." (Ex. A to Mot. to Dismiss, at 4, Dkt. No. 132-3.)

stated that she thought Jackson had shot Greene.  (Ex. M. to Reply to Mot. to Dismiss, Dkt. No. 150-1, at 39.)

Jackson also submitted an affidavit from Deane, Jr. indicating that Jackson told Deane, Jr. that he was not coming to Lindsey Drive on the night of the shooting, and that Jackson had claimed he knew nothing about the shooting.  (Aff. Jeffrey Deane, Ex. Q to Reply to Mot. to Dismiss at 1, Dkt. No. 150-1 at 44.)  Similarly, Jackson asserts counsel was ineffective for failing to subpoena "Banard" and "Leroy," who he states would have contradicted Sheron and Cedric's testimony that Jackson told them he had killed Greene.[19]  Bernard Washington signed an affidavit indicating that, contrary to Cedric and Sheron's testimony, Jackson never stated that he killed Greene, and asserting that he would have testified to this at trial if he had been called as a witness.  (Aff. Bernard Washington, Dkt. No. 144-2 at 11.)  However, it is not clear that the jury would have credited these individuals' testimony.  Further, Jackson has not shown that the testimony would have changed the trial outcome in light of the fact that eyewitnesses Antron Greene and Darius Greene identified Jackson as the shooter.  (Trial Tr. at 80, 150, Dkt. No. 108.)  Accordingly, Jackson has not shown that counsel provided ineffective assistance under *Strickland* and this claim will be dismissed.[20]

### (4) Counsel's Alleged Coercion of Jackson Not to Testify

---

[19] Cedric testified at trial that Jackson told him, "I shot at [Greene].  I hid in the bushes.  I shot at him." (Trial Tr. at 83, Dkt. No. 110.)

[20] Jackson also argues that counsel should have called potential witnesses Jeremy Deberry, Cedric Deberry, and Lavelle Davis, to testify that the "[g]overnment's witnesses were testifying false."  (Ex. A. to Mot. to Dismiss, Dkt. No. 132-3.)  However, beyond this generalized statement, Jackson fails to effectively proffer these witnesses expected testimony, or show that it would have changed the trial outcome.  "[A]n allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced."  *Beaver v. Thompson*, 93 F.3d 1186, 1195 (4th Cir. 1996) (citing *Bassette v. Thompson*, 915 F.2d 932, 940-41 (4th Cir. 1990)).

11

Jackson claims that counsel provided ineffective assistance by coercing Jackson into not testifying at trial. A defendant has "'the ultimate authority' to determine 'whether to plead guilty, waive a jury [trial], testify in his or her own behalf, or take an appeal.'" *Florida v. Nixon*, 543 U.S. 175, 187 (2004) (quoting *Jones v. Barnes*, 463 U.S. 745, 751 (1983)). "Concerning those decisions, an attorney must both consult with the defendant and obtain consent to the recommended course of action," or defer to the wishes of the defendant. *Nixon*, 543 U.S. at 187.

However, Jackson presents no facts to support a claim that counsel used coercion or prevented him from testifying. Jackson merely states that counsel advised him that his testimony would "open the door" to being questioned about a prior conviction. (Reply to Mot. to Dismiss at 24, Dkt. No. 150.) At most, Jackson has shown that counsel advised him not to testify based on trial strategy, which does not constitute ineffective assistance.[21] *See Jones v. Murray*, 947 F.2d 1106, 1116 n.6 (4th Cir. 1991) (restating the principle that counsel's advice not to testify is a "paradigm of the type of tactical decision that cannot be challenged as evidence of ineffective assistance.") (quoting *Hutchins*, 724 F.2d at 1436). Accordingly, Jackson has not demonstrated ineffective assistance of counsel and this claim will be dismissed.

### (5) Alleged Failure to Move to Suppress Evidence

Jackson argues that counsel provided ineffective assistance by failing to move for the suppression of certain evidence. Specifically, Jackson argues that the introduction into evidence of the gun, ballistic vest, and bullets found by law enforcement during a search of Jackson's

---

[21] Jackson also has not demonstrated that his failure to testify in his own defense prejudiced him. Even assuming a factual dispute existed about whether counsel inappropriately convinced Jackson not to testify, Jackson has not set forth facts sufficient to show that there is a reasonable probability that Jackson would not have been convicted if he had testified. The decision to testify carries with it considerable strategic disadvantages. *See Whitley v. Bair*, 802 F.2d 1487, 1494–97 (4th Cir. 1986) (finding that the negative effects of defendant's testimony, including admission of defendant's extensive criminal history, would have far outweighed any mitigating effects of the testimony). Jackson apparently now believes his testimony would have helped his case; however, there is no evidence that the jury would have found him persuasive, especially in light of the other evidence in the record, including eyewitness accounts of the shooting.

mother's house was improper because neither the gun nor Jackson's name were listed on the search warrant.

However, Jackson has not shown that a motion to suppress would have been successful, and the Sixth Amendment does not require counsel to raise a meritless argument. *See Sharpe*, 593 F.3d at 383. The fact that the gun was not listed on the warrant does not make the warrant defective or the seizure of the gun illegal. Testimony at trial was that the officers were looking for drugs in the residence, pursuant to a valid search warrant, and found the other items as well. (Trial Tr. at 147, Dkt. No. 107.); s*ee United States v. Jackson*, 131 F.3d 1105, 1109 (4th Cir. 1997) ("[W]hen an officer's presence in a residence is justified by a warrant . . . he may seize incriminating evidence that is in his plain view."); *see also Horton v. California*, 496 U.S. 128, 133 (1990) ("If an article is already in plain view, neither its observation nor its seizure would involve any invasion of privacy."). Further, evidence at trial sufficiently linked Jackson to the items seized.[22] Accordingly, Jackson has not shown that counsel provided ineffective assistance under *Strickland* and this claim will be dismissed.

### (6) Alleged Government Intimidation of Witnesses

Jackson argues that counsel provided ineffective assistance by failing to object to the government's alleged intimidation of witnesses. Jackson claims that the government threatened to bring perjury charges against Marquita unless she changed her previous testimony before the grand jury that Jackson was home with her on the night of the murder. "Judicial or prosecutorial

---

[22] In his reply, Jackson also argues that the evidence should have been suppressed because the search warrant was not based on probable cause. In support, Jackson states that he did not live at his mother's apartment, and too much time had passed between the shooting and the time the search occurred. He also states that no evidence connected illegal activity to his mother's residence, where the search was conducted. These arguments also fail because the search and seizure were made pursuant to a valid search warrant issued based on probable cause. Specifically that "within the past 72 hours a reliable confidential informant made a controlled purchase of cocaine" from Sheron at the residence. (Aff. for Search Warrant, Ex. U to Mot. to Vacate, Dkt. No. 132-5 at 24.) The fact that other incriminating items were also found that were ultimately linked to Jackson does not affect the validity of the search and seizure. *See Jackson*, 131 F.3d at 1109.

intimidation that dissuades a potential defense witness from testifying for the defense can, under certain circumstances, violate the defendant's right to present a defense." *United States v. Williams*, 205 F.3d 23, 29 (2d Cir. 2000) (citing *United States v. Golding*, 168 F.3d 700, 705 (4th Cir. 1999)); *see also Webb v. Texas*, 409 U.S. 95, 97–98 (1972) (finding that defendants due process right to present witnesses to establish a defense precludes prosecutors and judges from improperly threatening witnesses with perjury prosecution). However, a due process violation does not necessarily arise solely because the government warns a defense witness of the consequences of committing perjury. *Williams*, 205 F.3d at 29.

At trial, Marquita testified that Jackson was not home on the evening of the shooting and that she had agreed to lie to the police for him, telling them that he was home playing video games all night. (Trial Tr. at 173-74, Dkt. No. 109.) Marquita stated that she changed her story from her grand jury testimony on the advice of counsel, who advised her that the government could prosecute her based on perjury and conspiracy if she lied at trial. (*Id.* at 196–97.) Jackson has not demonstrated any improper threats or intimidation of defense witnesses by the government.[23] *See Williams*, 205 F.3d at 29 (finding that the fact that the government warns a defense witness of the consequences of committing perjury, "even if carried out in a caustic manner," does not rise to the level of a constitutional violation) (quoting *United States v. Hayward*, 6 F.3d 1241, 1257 (7th Cir. 1993)). Moreover, this is not a case where the defendant was completely deprived of a witness's testimony, as Marquita did not invoke the Fifth Amendment or refuse to testify. Indeed, Marquita testified that, even though she did not know where Jackson was on the night of the murder, she still did not believe that he had killed the

---

[23] Jackson also has not shown that, were it not for the possibility of a perjury charge, Marquita would have testified on his behalf. Thus, because Jackson has not shown that he was deprived of any favorable witness testimony, he has not shown prejudice. *See United States v. Saunders*, 943 F.2d 388, 392 (4th Cir. 1991) (finding that even if a defendant demonstrates an improper threat or intimidation, the court must still determine whether the error was harmful or prejudicial).

victim. (Trial Tr. at 221, Dkt. No. 109.) Accordingly, Jackson has not shown any grounds on which counsel should have objected to the government's alleged intimidation of witnesses, and thus has not demonstrated ineffective assistance of counsel. Therefore, this claim will be dismissed.[24]

## B. Ineffective Assistance of Appellate Counsel

### (1) Alleged Failure to Appeal Based on Prosecutorial Misconduct

Jackson claims that appellate counsel provided ineffective assistance by not appealing based on prosecutorial misconduct. Jackson argues that counsel should have brought challenges under *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States,* 405 U.S. 150 (1972), on the grounds that the government used evidence it knew to be false or misleading to convict Jackson, specifically, perjured testimony. Jackson's arguments primarily involve inconsistencies between witnesses' testimony before the grand jury, and at trial.

A conviction acquired through the knowing use of perjured testimony by the government violates due process, regardless of whether the government solicited the testimony or simply allowed it to pass uncorrected. *United States v. Kelly*, 35 F.3d 929, 933 (4th Cir. 1994) (citing *Napue v. Illinois*, 360 U.S. 264, 269 (1959)). However, "[a] defendant seeking to vacate a conviction based on perjured testimony must show that the testimony was, indeed, perjured." *United States v. Griley*, 814 F.2d 967, 971 (4th Cir. 1987). Establishing perjury requires a showing that a witness testifying under oath gave "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94 (1993). Mere inconsistencies in

---

[24] Jackson also claims that the government induced witnesses Tyrone Scott, Cedric Washington, and Sheron Gentry to commit perjury by testifying against Jackson. However, Jackson has not provided any evidence of government misconduct, such that counsel was ineffective for failing to object. Conclusory allegations of ineffective assistance of counsel, without factual support, are insufficient to raise a constitutional issue or require an evidentiary hearing. *See Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992). Accordingly, this claim also fails and will be dismissed.

testimony by government witnesses do not establish the government's knowing use of false testimony. *See Bucci v. United States*, 662 F.3d 18, 40 (1st Cir. 2011) ("[T]he fact that a witness contradicts herself or changes her story does not establish perjury and does not create an inference, let alone prove, that the prosecutor knowingly presented perjured testimony.") (quotation marks and internal citations omitted); *United States v. Holladay,* 566 F.2d 1018, 1019 (5th Cir. 1978) ("Presentation of a witness who recants or contradicts his prior testimony is not to be confused with eliciting perjury.").

Jackson has not met his initial burden of showing that the testimony at trial was false; instead, at most, he has established "mere inconsistencies." He also has not shown that the government knew the testimony to be false. Moreover, the omission of a specific issue from a filed appeal, even if the issue is non-frivolous, does not constitute ineffective assistance. *Jones*, 463 U.S. at 751–54 (holding that a defense attorney does not have a constitutional duty to raise every non-frivolous issue requested by his client). Accordingly, Jackson has not shown that appellate counsel provided ineffective assistance for failing to appeal on these grounds and this claim will be dismissed.

**(2)  Alleged Failure of Appellate Counsel to Appeal based on Sufficiency of the Evidence**

Jackson argues that appellate counsel provided ineffective assistance by not arguing on appeal that the government failed to present sufficient evidence to convict him on counts six and eight. Jackson also states counsel should have appealed based on a claim of actual innocence of these counts. With regard to count six, tampering with a witness, Jackson argues that the government failed to present sufficient evidence that Jackson murdered Greene to "prevent him

16

[from] communicating with federal officers."[25] (Reply to Mot. to Dismiss at 45, Dkt. No. 150.) With regard to count eight, Jackson argues that the government failed to present evidence that Jackson violated the "use and carry" element of 18 U.S.C. § 924(c)(1)(A). Jackson argues that under *Bailey v. United States*, 516 U.S. 137, 138 (1995), the government must prove more than mere possession to satisfy "use," such as "brandishing, displaying, bartering st[r]iking with, and . . . firing or attempting to fire a firearm . . . ." (Reply to Mot. to Dismiss at 48, Dkt. No. 150.)

These claims fail because appellate counsel is not required to present every claim, or even every non-frivolous claim, that a client wishes to assert. *See Jones*, 463 U.S. at 752–53 (noting appellate counsel must "examine the record with a view to selecting the most promising issues for review.") Courts should ordinarily "find ineffective assistance for failure to pursue claims on appeal" only when "'ignored issues are clearly stronger than those presented.'" *United States v. Mason*, 774 F.3d 824, 829 (4th Cir. 2014) (quoting *Smith v. Robbins*, 528 U.S. 259, 288 (2000)). Jackson has not shown that his proffered arguments were clearly stronger than the arguments counsel presented, involving admissibility of evidence under the Confrontation Clause of the Sixth Amendment and whether the conspiracy charged under count one violated the Double Jeopardy Clause of the Fifth Amendment. *Jackson*, 706 F.3d at 265. Accordingly, Jackson has not shown ineffective assistance of counsel under *Strickland*, and this claim will be dismissed.[26]

---

[25] 18 U.S.C. § 1512(a)(1)(C) makes it a crime "to kill another person, with intent to . . . prevent the communication by any person to a [federal] law enforcement officer" of "information relating to the . . . possible commission of a Federal offense . . . ."

[26] In his reply to the motion to dismiss, Jackson also argues that appellate counsel provided ineffective assistance by failing to argue on appeal that Jackson was actually innocent of counts five, nine and ten. These claims likewise fail because appellate counsel is not required to present every claim, or even every non-frivolous claim, that a client wishes to assert. *See Jones*, 463 U.S. at 752-53. Jackson has not shown that his proffered arguments were clearly stronger than the arguments counsel presented. Indeed, Jackson's argument that the court constructively amended count five has no support in the record, as jury instruction 31 accurately sets forth count five

These claims also fail because Jackson has not shown that he was actually innocent of either count. Regarding count six, in *Fowler*, the Supreme Court determined that where a witness is killed to prevent the witness from talking with a law enforcement officer, "the government must show *a reasonable likelihood* that, had, e.g., the victim communicated with law enforcement officers, at least one relevant communication would have been made to a federal law enforcement officer." *Fowler v. United States*, __U.S.__, 131 S. Ct. 2045, 2052 (2011). The government is not required to show that such a communication "would have been federal beyond a reasonable doubt, nor even that it is more likely than not." *Id.* However, the government "must show that the likelihood of communication to a federal officer was more than remote, outlandish, or simply hypothetical." *Id.*

The government emphasizes in its motion to dismiss that "federal law enforcement officers were involved well before the August 11, 2006 murder of Johnell Green."[27] (Mot. to Dismiss at 52, Dkt. No. 148.) The government cites to multiple instances of controlled buys made from either Jackson or his co-conspirators in Staunton, Virginia, between August 1 and September 5, 2006. Further, Jackson was indicted, and pleaded guilty in federal court, to conspiring to distribute at least five grams of cocaine base for the Staunton conspiracy. Due to the involvement of federal law enforcement officials in the investigation of the drug distribution network, and the fact that Greene had previously cooperated with law enforcement, it is

---

of the indictment. Further, sufficient evidence was presented for the jury to find Jackson guilty of counts nine and ten, corruptly persuading Marquita and Tyrone to provide a false alibi to law enforcement, with the intent to influence their testimony in an official proceeding, and Jackson has not shown he was actually innocent of these convictions. Accordingly, Jackson has not shown ineffective assistance of counsel under *Strickland*, and these claims will be dismissed.

[27] Jackson attached as an exhibit to his memorandum in support of motion to vacate a report of investigation conducted by federal authorities regarding the shooting of Greene. (Ex. J1 to Mem. in Supp. of Mot. to Vacate, Dkt No. 132-4 at 11.) The investigation was conducted by the Bureau of Alcohol, Tobacco, Firearms and Explosives on October 25, 2005 and included an interview of Tyrone regarding Jackson and his alibi on the night of Greene's shooting.

reasonably likely that, "had the victim communicated with law enforcement officers, at least one relevant communication would have been made to a federal law enforcement officer."[28] *Fowler*, 131 S. Ct. at 2052. Accordingly, Jackson has not shown that appellate counsel provided ineffective assistance for failing to appeal on these grounds and this claim will be dismissed.[29]

Count eight charges Jackson with a violation of 18 U.S.C. § 924(c)(1)(A). Section 924(c)(1)(A) provides, in pertinent part, as follows:

> [A]ny person who, during and in relation to any crime of violence or drug trafficking crime . . . for which [he] may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years . . . .

Thus, the government was required to show that Jackson either used *or* carried a firearm during and in relation to a drug trafficking crime. In *Bailey*, the Court held that simply possessing a firearm, without active employment, did not constitute "use" under § 924(c). 516 U.S. at 143, 149 ("A defendant cannot be charged under § 924(c)(1) merely for storing a weapon near drugs or drug proceeds. Storage of a firearm, without its more active employment, is not reasonably

---

[28] Indeed, when ruling on the government's motion *in limine* to admit Greene's written statement to the police describing Jackson's involvement in Greene's attempted murder, I made an explicit finding that preventing Greene from testifying was a precipitating and substantial reason why Jackson murdered him. (Trial Tr. at 141, Dkt. No. 109.)

[29] Jackson also attempts to make a freestanding claim of actual innocence of counts six and eight. Whether a freestanding claim of actual innocence is cognizable in a habeas action unaccompanied by an assertion of an independent constitutional violation remains unsettled in the Fourth Circuit. *See Royal v. Taylor*, 188 F.3d 239, 243 (4th Cir. 1999). In light of this, and because Jackson is acting *pro se*, the court will liberally construe his pleadings to assert a companion claim that counsel provided ineffective assistance by not arguing actual innocence at trial, or on appeal. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

The United States argues that these claims should be rejected because Jackson failed to raise them on direct appeal. Jackson responds that ineffective assistance of counsel excuses his procedural default. However, as discussed above, I find that Jackson has not shown that counsel provided ineffective assistance. Accordingly, Jackson has not demonstrated "either 'cause' and actual 'prejudice'" for his default, and, as discussed previously, he has not shown that he is "actually innocent." *Bousley*, 523 U.S. at 622 (internal citations omitted). Accordingly, I conclude that these claims are procedurally defaulted and must be dismissed. *Id.* at 621-22; *United States v. Pettiford*, 612 F.3d 270, 280 (4th Cir. 2010).

19

distinguishable from possession).[30]  "The plain meaning of the term 'carry' as used in § 924(c)(1) requires knowing possession and bearing, movement, conveyance, or transportation of the firearm in some manner." *United States v. Mitchell*, 104 F. App'x 3d 649, 653 (4th Cir. 1997) (unpublished).[31]

Jackson's argument that the government failed to introduce sufficient evidence to support the jury's finding of guilty under § 924(c)(1)(A) fails.  Evidence was presented at trial that, while he was incarcerated, Jackson asked Marquita to have Jason Jordan help her move and deliver or sell cocaine and guns that Jackson had in a storage unit, in order to remove incriminating evidence and continue his drug trafficking.  Pursuant to Jackson's request, Marquita and Jason Jordan went to the storage unit and removed a black duffel bag containing both drugs and guns.  At trial, Jason Jordan testified the duffel contained a shotgun, revolver, and partially cooked crack cocaine and powder cocaine.  (Trial Tr. at 120, Dkt. No. 109.)  Jason Jordan further testified that he sold the drugs and returned the guns to Marquita's house shortly before Jackson was released from jail.  (*Id.* at 123-25, 135.)   The evidence that Jackson directed his co-conspirators to remove both guns and drugs from his storage locker, in order to conceal his crimes and fund his criminal enterprise by selling the drugs, satisfies the definition of "carry" in

---

[30] In response to *Bailey*, Congress added in 1998 the "possession" prong to § 924(c), which now includes distinct "use and carry" and "possession" offenses.  *See United States v. O'Brien*, __U.S.__ 130 S. Ct. 2169, 2179 (2010).  However, Jackson was not charged in count eight with "possession" of a firearm in violation of § 924(c).

[31] In *Mitchell,* the court provided the following relevant illustration:

For example, suppose the evidence demonstrated that an individual places cocaine and a firearm into a duffle bag, carries the bag containing these items from his residence to his automobile, loads the items into the trunk of his automobile, drives across town to an arranged transfer point, removes the bag from the trunk and the weapon from the bag, places the firearm in the pocket of a jacket he is wearing, and delivers the drugs. This evidence would be sufficient to demonstrate that the offender 'carried' the firearm, within the meaning of § 924(c)(1), at *each stage* of his journey.

104 F.3d at 653 (emphasis added).

§ 924(c)(1).[32] *See United States v. Wilson*, 135 F.3d 291, 306 (4th Cir. 1998) (defendant may be convicted of a charge for using or carrying firearm during and in relation to drug trafficking offense on basis of coconspirator's use of gun if use was in furtherance of conspiracy and was reasonably foreseeable to defendant.); *see also United States v. Reed,* 780 F.3d 260, 272 (4th Cir. 2015); *United States v. Abed,* 203 F.3d 822, at *12 (4th Cir. 2000) (table decision); *United States v. Timmons*, 233 F. App'x 206, 212 (4th Cir. 2007) (unpublished); *United States v. DeSouza*, 165 F.3d 20 (4th Cir. 1998) (table decision).

I conclude that "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Thus, Jackson cannot show that counsel was ineffective for failing to appeal on these grounds and this claim will be dismissed.

## IV.

For the reasons stated herein, I will grant the government's motion to dismiss.

Entered this  19th  day of October, 2015.

Norman K. Moon

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

[32] Jackson complains that there was not sufficient evidence to convict him of "use" under the statute. However, while the evidence at trial may not have met the requirement under *Bailey* that "'use must connote more than mere possession of a firearm by a person who commits a drug offense" it does satisfy the definition of "carry." *See Bailey,* 516 U.S. at 143. It is immaterial that Jackson was charged in the Indictment with knowingly using *and* carrying a firearm during and in relation to a drug-trafficking crime because the Indictment referenced § 924(c)(1)(A), which imposes additional punishment for using *or* carrying a firearm in relation to a drug-trafficking crime. "It is well settled that conjunctive indictment . . . permits disjunctive consideration of guilt." *United States v. Champion*, 387 F.2d 561, 563 n.6 (4th Cir. 1967); *see also United States v. Montgomery*, 262 F.3d 233, 242 (4th Cir. 2001) (reiterating that "[w]here a statute is worded in the disjunctive, federal pleading requires the Government to charge in the conjunctive. The district court, however, can instruct the jury in the disjunctive") (citation omitted)). The jury was properly instructed in Jury Instruction 40 regarding the charge of using or carrying a firearm during or in relation to a drug trafficking crime.

21